case this morning is 4100884 Woodbine Park, Prairie State's homeowners versus Fletcher and Al for the appellant, Paul Duffy for the appellee, Carl Tinney, Timothy Teak, June, Ty, are you both going to be presenting our oral argument? Very well. Mr. Duffy may proceed. May it please the court, counsel. Good morning, your honors. My name is Paul Duffy. I am the attorney representing David Fletcher and Sally Fletcher in connection with their appeal of the trial court's denial of the motion that each of them filed pursuant to Illinois Supreme Court Rule 137 in the trial court seeking sanctions against the attorney for the plaintiffs in the underlying case, as well as the individual directors of the trial court. We have argued that the actual party in interest in the litigation is the individual directors, since they were the only entities that acted to initiate the lawsuit. Illinois Supreme Court Rule 137 provides that an attorney's signature on any paper or pleading is a certificate that, to the best of the attorney's knowledge, information, and belief, after a reasonable inquiry, the document is well-grounded in fact and warranted by the attorney. The purpose, obviously, of that rule is to prevent litigants from abusing the judicial process in order to harass an opponent or to increase the cost of litigation. Our motion is based on two instances of violations of Supreme Court Rule 137, and we believe the trial court abused its discretion in denying both of those motions. The first that I'll address is the motion of Dr. Fletcher pursuant to Rule 137. This case initiated from a subdivision located in Mount Zion, Illinois, called the Woodbine Park Prairie Estates, for which Dr. Fletcher acted as a developer. He subdivided the property, coordinated the construction of certain roads, bridges, and culverts that comprise the common area of that association. He caused a declaration to be formed and a homeowners association to be created. This case initially started when the plaintiffs sued Dr. Fletcher on a one-count complaint in late, I believe, October or November 2008. It was initially a one-count complaint seeking specific performance and asking Dr. Fletcher, as a developer, to convey ownership of common areas to the homeowners association. It quickly mushroomed beyond that into a very large and extensive series of complaints alleging violations of standards set forth by the Illinois Department of Transportation, or IDOT. The plaintiffs initially filed their first amended complaint in late 2009, I believe, November 2008. In that complaint, they alleged violations of specific IDOT standards in connection with the construction of these common areas. Were there problems with the development? In terms of the construction? There were a host of problems. Dr. Fletcher is not a professional developer, but developed it on his own. There were problems with surveying the property, I believe. Problems with bridges and roads? There were routine repair and upkeep that was required for the bridges and roads that Dr. Fletcher did himself initially, but that the homeowners association was required to undertake afterwards. Why doesn't the homeowners association have the right to complain about that? They do, absolutely. That's by way of background, they do. There was a delay in conveying the property to the homeowners association due to an error in the survey of the property. The common areas were not properly surveyed. They weren't surveyed at all in a fashion that could be transferred. So the declaration described the common areas using generic terms like X road and so forth, rather than a legal description. So there was a delay in conveying the common areas so that Dr. Fletcher could actually do a proper legal survey of the property for purposes of transferring it. And he ultimately did transfer it in July 2009. So what was it about this lawsuit that warranted sanctions? Well, they went from just that, as you said, the homeowners were within the rights to seek specific forms of transferring the property, but then the complaint mushroomed into a series of IDOT allegations. Excuse me, a series of what? I'm sorry, allegations of violations of Illinois Department of Transportation standards. IDOT, okay. And our argument is before the plaintiffs started alleging IDOT violations, they had an obligation under Rule 137 to do an adequate factual investigation to determine, first of all, whether there were IDOT standards that applied in the first place in the subdivision. And secondly, if those standards applied, whether there were violations. And the problem is that the plaintiffs alleged through three consecutive amended complaints that there were IDOT violations, but they were never able to identify a single IDOT standard that applied. Well, the fact that you lose a lawsuit doesn't mean sanctions are awarded. That's correct, I agree with that. And the problem is that they made specific allegations. They didn't just lose. They alleged that Dr. Fletcher violated Illinois Department of Transportation standards in connection with the construction of these common areas. And they never did factual... First of all, they filed two complaints with no factual investigation. They could not identify a specific... They were seeking to hold him to comply with these specific standards, and there was never a standard that they could identify that applied in the first place. IDOT has obviously a broad variety of applications from suspension bridges over the Mississippi to highways to township roads and so forth. In this situation, the structures in the common area have been approved by three governmental entities. The Long Creek Township, the Village of Mount Zion, and Macon County. If the plaintiff wanted to assert IDOT violations, they had to, at a minimum, do investigations showing not only that IDOT standards applied, but that IDOT standards that were more stringent than the three government standards had already applied existed. But they never did that. The trial court dismissed the complaint in March 2009. I thought they did an investigation, and their experts said it was just impossible to ascertain exactly what the IDOT violations were. Well, before they filed... First of all, they filed two versions of an amended complaint without any investigation. They couldn't identify any, and counsel admitted during the hearing on the motion to dismiss the second amended complaint that he had not identified a single IDOT standard, and he likely could not. The court dismissed that complaint, and before they filed the third amended complaint, which was in October of 2009, they hired a civil engineering consulting firm to evaluate the documents and to inspect the property and to identify, the stated purpose was to identify what standards applied and whether they were violated. Well, that seems like a good faith action. Well, it was until they went and filed the third amended complaint, because the civil engineer, the expert that they hired, said that we can't identify, a contractor cannot identify a single IDOT standard that applies to the subdivision. But they went ahead and filed a third amended complaint anyway. Their consultants told them that there were no standards that they could identify, yet they filed a third amended complaint in which they alleged that IDOT standards applied and were violated. Again, without identifying a single IDOT standard that applied. So their investigation actually came to a result that they couldn't identify IDOT standards. And based on that, a reasonable litigant and party would have dropped any IDOT claims, because their own consultant had said that they cannot, in very bad terms, they cannot identify an IDOT standard that applied there. Yet they filed a third amended complaint, nevertheless alleging that Dr. Fletcher violated IDOT standards, notwithstanding the fact that their own retained consultant could not identify any standard. The trial court... Was his problem trying to figure out what had been done in the subdivision? He couldn't figure out what the roads consisted of or how bridges had been built? I believe they did an investigation. They actually dug holes and inspected the structure. They installed warnings into the roadways to find out how much asphalt and how much gravel and so forth that there was. And the report was very lengthy in terms of what the structures consisted of and how they were constructed and how they had worn over time. But it did not... They had to do that because your client didn't have any plans that showed what had been done. Well, the client had... And the argument that counsel for the plaintiffs made is there was no design plan, but there was a design plan. And under each iteration of the complaint they filed, they filed a plat of survey for the subdivision that stated, that depicted the actual construction design for the roads and the bridges and the culverts. And each version of the complaint, they attached that. And it described... It was actually... The plat would actually depict how much from the dirt layer, how much gravel would go over it, was required to go over it, and how much asphalt was required to go on top of the gravel. And it set forth... And it's attached to every version of the complaint they filed. It also included design specifications for a bridge that is located at the subdivision. So there was a plan in place. It wasn't what they... Apparently they were seeking something else, but it's not correct that they've argued that there's not a design plan. But they've attached the design plan to every version of the complaint. And that this existed before the construction... During the construction of those roadways. And they had full access to inspect the roadways. And again, to actually physically dig samples to determine how... Whether the amount of asphalt was there and whether it complied... Basically to determine information about whether the construction complied with the design plan. You can see there were problems with the roads and the bridges. I can see that there was everyday wear and tear on the roads and so forth. Yes, the roads were constructed before there were any structures there. When the property was subdivided, I think there was one house there. Then the roads and bridges and culverts were constructed. And as the lot sold, individual owners built... I think there are now seven houses. So during the... As the roads aged and so forth, there was everyday wear and tear on the road. The argument that me and our briefs was... The council kept relying on these photographs that they attached to the complaint. Those photographs were never entered into evidence. There was never any foundation laid for the photographs. There's no evidence in the record that those photographs... Other than what the allegations in the complaint are. Which they don't serve to authenticate documents or lay a foundation for them. There's no evidence in the record when those photographs were taken. Who took them. What they actually depict. Whether they are what they purport to be. But yes, there was everyday wear and tear on the homeowners. One of the reasons... So is there authority for the proposition that we can't consider those photographs? Well, they're not... The issue here is whether sanctions were appropriate. Well, there's no evidence in the record that they are what they purport to be. I mean, they're not valid evidence. They were attached to the complaints, but there's no... Well, at what point of the proceeding should the foundation have been established for the photographs if the case was dismissed? Well, there was a two-day preliminary injunction hearing where that was one of the issues that arose during the course of... The other appellant, Sally Fletcher, filed a motion for preliminary injunction where there was a two-day hearing on both sides. I think there were eight witnesses. Both sides were given a full and fair opportunity to present evidence as to the matters at issue. That was certainly an opportunity for them to present that evidence. Was it argued at that time that there was an insufficient foundation for the photographs and that they shouldn't be considered? I believe that they made no attempt during that hearing to authenticate them. That's not responsive to the question I asked. I'm sorry. Was it argued at that time that there was no foundation for the photographs and that they should not be considered? During that preliminary injunction hearing, no. That was argued during the hearing on the motion for sanctions itself where counsel presented the same photographs that they had attached to the complaint. What did the court say? The judge did not make any specific ruling. We objected to him that the judge said he would overrule the objection. He did not make any specific ruling on whether they... He did not admit them into evidence and he did not make any specific ruling on passive provenance ability. Pretty experienced trial judge in this case. Yes, sir. Why did he... What is your speculation as to why he did not grant your request? It's impossible to tell because he did... First of all, with respect to the motion that Sally Fletcher filed, he made no finding whatsoever. He simply denied it. With respect to Dr. Fletcher's motion, he said that irrespective of the fact that the plaintiffs failed to establish their claims, he found that without any supporting fact that the suit was not brought in bad faith. Our position is that this is an ongoing, obviously ongoing, dispute among the homeowners and Dr. Fletcher. And that rather, you know, they had... As your Honor mentioned, they did have... If there was property to be conveyed to them, they had every right to file, to seek an order directing Dr. Fletcher, directing specific performance for him to do that. Where they went astray and went insanctionable on territory was when they said that he violated specific provisions... Well, they violated provisions of IDOT with respect to the construction of roads, bridges, and culverts, and never identified a single standard, defied the court's order that they identify such standards. And then when they did hire a consultant late in the game, the 11th hour before the third amendment complaint, that consultant told them that they could not identify IDOT standards that applied to the subdivision. And yet they alleged violations of IDOT standards anyway. And the judge at that point, after counsel again admitted at a hearing in March of 2010 that he did not and could not ever identify IDOT standards that applied, nevertheless maintained a complaint that alleged that IDOT standards were violated in an attached expert report that belied the complaint. It's found the exact opposite, that they could not identify IDOT standards. So this whole case comes down to whether or not IDOT standards were violated, and whether they alleged that in good faith? Yes, whether they did an adequate investigation. Well, it boils down to whether they did an adequate investigation before they made this allegation or any investigation. It's clear that they didn't. If IDOT standards were not violated, did they have no basis for a lawsuit? Well, they didn't. If no IDOT standards exist that apply to these structures, then they have no lawsuit based on IDOT violations. They could have alleged something else if there was a violation. Was there anything else alleged other than violation of IDOT standards? The only other thing was the initial version of this complaint saw a specific performance for conveyance of the property, which Dr. Fletcher won summary judgment on that. It was uncontested. That happened in July of 2009. Aside from that, every single allegation related to IDOT, alleged IDOT violations that were never identified. Again, through three iterations of the complaint, Dr. Fletcher was forced three separate times to move to dismiss. So if I understand correctly, your position is perhaps with the first and second complaints when there was still some uncertainty, that wasn't a problem, but by the time of the third complaint, they knew that they could not identify a specific IDOT violation and they needed to do so? Well, I believe with respect to the first iteration of the complaint, I believe that's correct. With respect to the second one, the plaintiffs actually alleged that this area that they sought to transfer failed to comply with IDOT standards. So I believe they, at least for part of that first count, they began to run astray when they amended it to include a specific allegation that IDOT standards were violated, not any IDOT standards. It was clear, at least, the counsel of the plaintiffs admitted at least, at a minimum, by the time they filed the second amendment complaint, or by the time they argued the motion to dismiss the second amendment complaint, counsel admitted that he, at that point, did not know that IDOT standards had applied and likely could not find out anything that did. The court dismissed that complaint and again they hired an expert, which confirmed the conclusion and said several times... And then they filed a third complaint anyway? They filed a third complaint anyways, catching the expert report that contradicted what was in the complaint. The expert said we can't identify any standards, and the complaints nevertheless alleged that you violated these IDOT standards, which they didn't identify standards that specifically applied. And again, these are not municipal roads we're talking about. It's a small subdivision and there are roads, bridges, and culverts. Well, what I'm trying to understand is, is it your position that short of identifying IDOT standards that were violated and a claim that IDOT standards were violated, that the plaintiffs had nothing else to proceed on? Well, in the context of an... I'm sorry. In the context of this case. They could have alleged something else. They could have alleged some type... Well, was there anything they did allege that had any merit to proceed forward? The initial version of the complaint that they filed, count one, did seek specific performance without reference to IDOT. That was arguably a reason why... And what happened to those claims? Well, first of all, the first claims seeking specific performance, Dr. Fletcher conveyed the property, once he properly surveyed it, in July of 2009. The court eventually granted summary judgment in Dr. Fletcher's favor in connection with that because he had already conveyed the property that they saw in connection with that. The remainder of count one as it pertained to IDOT violations and the remaining three counts, or four counts total against Dr. Fletcher, the remaining three counts were dismissed with prejudice by Judge Payne. Again, for the third... Although he gave them three separate chances, they still were unable to identify a specific IDOT violation. And the judge dismissed it with prejudice after a full opportunity for hearing on the part of all the parties represented by counsel. The second Rule 137 motion is on behalf of Sally Fletcher, which is possibly an even more egregious example of unfounded pleadings in with Dr. Fletcher. Sally Fletcher purchased property, I'm sorry, 12 lots at Woodbine Estates for $634,000 in November of 2008. Under the homeowner's declaration, she had the right, any buyer had the right, to cast one vote at a homeowner's meeting, any homeowner's vote, for each lot that she acquired. So under the declaration then, in fact, she had the right to cast 12 votes for anything subject to a vote by the members. She attempted to call a meeting and the plaintiff sued her to prevent her from doing that. They claimed in their lawsuit that her acquisition was not a bona fide arms-length transaction. It does look suspicious, doesn't it? Not particularly. It was her sister, but there was no... There appears to be a dispute between the developer and the homeowners, and all of a sudden the homeowner's sister owns 12 lots and she has control of the homeowners association. That doesn't look suspicious? Well, it may look suspicious, but there's nothing suggesting the transaction was not valid. It was for fair market value. Any other purchaser, anybody else, it was a terrible real estate market, anybody else could have come in and bought 12 lots and had the same result, acquired 12 ownership. But some of the existing homeowners, if they had the resources to do it, could have bought additional lots and thereby secured additional ownership, additional votes, excuse me. But during the preliminary injunction hearing, it became clear, first of all, Sally Fletcher demonstrated that it was a bona fide arm's length transaction for fair market value. It cost $634,000 to acquire this property, which reflected the fair market value. There was no indication that she was paying a mortgage to pay that. Dr. Fletcher took the funds, the unrebutted testimony was Dr. Fletcher, when she paid those funds, took those funds to pay off a note that was then becoming due. Counsel, you'll have time when we vote. Thank you. I'm sorry. IDOT. Judge Payne ruled as a matter of law that the homeowners declaration basically made a contractual obligation to build roads and bridges in the subdivision to IDOT standards. Our retained expert, Homer L. Chastain and associates, professional engineers, told us that the first step to building something to IDOT standards is having a design plan, because the design plan determines which standards apply. There are no IDOT standards for concrete poured on top of crushed culvert pipes in a creek bed. The bridge that's out there is not an IDOT bridge. Now, counsel for appellant has kept saying, well, we can't say what standards apply to these structures. Well, there aren't any standards that apply to these structures. I understood counsel's argument to be you claim that the construction violated IDOT standards. We said it wasn't built to IDOT standards, which, according to Homer L. Chastain and associates, it wasn't because they said it was going to have to be torn down and replaced to meet minimum IDOT standards. I'm not sure I followed. There are no IDOT standards, but IDOT standards weren't followed. That seems to be what you're arguing. Well, no. Building something to IDOT standards requires first having a design plan. So then you can say, okay, this is a design for a one-lane bridge going over a creek. Here's the standards that apply. Or it's a two-lane bridge going over a river or whatever. That's the first step, is you have the design plan. There never was a design plan, according to Homer L. Chastain and associates. And according to our discovery, nobody could ever find a design plan that a contractor could use in order to build a bridge that would comply with IDOT standards. Well, I have the same difficulty. A bridge has been built, either complied with IDOT standards or didn't, and if it didn't, you should be able to say where. And if you can't say where, then I guess it did. This is kind of like being a little bit pregnant, counsel. I don't think it works. Well, that's the same problem we had convincing the trial judge. Well, take a shot with us. I will take my shot. Here's the deal. The judge and the plat said it has to be built to IDOT standards. The engineer says, in order to build something to IDOT standards, you have to have a design plan. There never was a design plan. Well, how about, there's a bridge built here, because it was already built, right? Right. You ask your expert, was this built in accordance with IDOT standards? Either yes or no. First question he's going to ask is, where's the design plan? Then I've got to get another expert. Because that's a fairly straightforward question. Yes or no. Here's the bridge. We're not talking about a design plan anymore, because we've got a real bridge. Well, your honor, the expert did in fact say that it would have to be torn down and rebuilt to meet minimum IDOT standards. I don't know any more clues. Was that because it didn't meet IDOT standards? Is it still there? It must not have. That's not quite good enough. I mean, that's why experts are supposed to be experts. It's got to be torn down because it doesn't meet IDOT standards, or it meets IDOT standards and it doesn't need to be torn down. Which one is the answer? He said it needed to be torn down and rebuilt to meet minimum standards. Which standards would apply depends on which design plan you come up with. And so stating in his report to you he couldn't identify the IDOT standards it didn't comply with? Well, in fact, he did list a lot of standards that normally would have to apply for design plans that would typically be used in a subdivision at this time. And those were then repeated and reiterated in the third amendment complaint. Had there been a design plan typical for this type of subdivision, here's the ones that would have applied. You know, if I throw a 2x4 across the ditch and call it a bridge, that doesn't mean it complies with IDOT. And you know, if I got an expert and hired him, I suspect he could explain why. He wouldn't need to say, yeah, well, I need to see the design plan for that 2x4. Well, he would say there is no IDOT spec for it. You mean, and therefore, gee, I can't say if that 2x4 across the ditch is a good bridge or not? Well, no. Does this make any sense to you? Well, the problem was that the trial court got this notion. We had to specify code and section wasn't done right. Well, didn't you plead that it violated IDOT standards? We said it wasn't built to IDOT standards. Wait, that calls for a yes or no question. I'm not the expert. I'm into yes or no. Did you plead that the bridge violated IDOT standards? Yes. Did you identify what standards they violated? We could not identify a code and chapter that violated standard because it wasn't built to any standard. It was just a homemade bridge. It wasn't built to any standard at all is the problem. At least according to the trial judge's earlier conclusions that it had to be built to IDOT standards and it just wasn't built to any standard at all. But let's assume that we've lost on the merits. The question that comes is was there a reasonable basis in fact for us to allege on information and belief that this thing wasn't built like we thought it should have been according to IDOT standards? Well, things have fallen apart. What about the photographs by the way? This was a 2615 which means that all allegations of the complaint have to be taken as true and these photographs were attached to the complaint and this was alleged that this is what the thing looked like when we filed the complaint so I think they have to be true. So they were incorporated into your complaint by reference? Yes. You don't think they had to be authenticated in order for the court to consider them? Not at a 2615 motion because we wouldn't have had a chance at that point. As far as that preliminary injunction hearing this was never an issue. It was just the counsel with Sally Fletcher regarding preliminary injunction. In Mr. Duffy's brief on HOA Directors and Ellis never sought nor received the required approval from the HOA membership to bring this baseless lawsuit. What's your response to that? Well your honor we entered into evidence at I think it was the hearing on the motion to withdraw as counsel, a letter that was signed by all the members of the HOA Association that said that we approved hiring Mr. Ellis to protect our rights. So when counsel says that you never received the required approval you disagree with that? I disagree. Do you know what he was referring to? What was the procedure for obtaining the approval? I think it's my understanding was that they're claiming that any expense over $10,000 had to have I think maybe a full voted members meeting or something. Did he ever argue to the trial court look this lawsuit has problems because they didn't even get the approval there for HOA's not even a proper party? Actually they did and the motion to dismiss the first version of the complaint Attorney Willoughby at that point argued that we had failed to allege that the corporation had authority I guess to bring the suit and Judge Payne denied that motion. I was unaware he was unaware of any pleading requirement the corporation has to plead and prove that its board actually voted to initiate a lawsuit. And my time's up unless there's any further questions. Time's not up yet. It's not red light. When it goes red your time's up but if you're finished that's fine. I have a question for you. Is Mr. Duffy correct when he specified that there were multiple reiterations of the complaint in this case? The first count? What happened was the first complaint was one count I think it was maybe even four allegations it was pretty simple. I want a specific performance on information and belief. These roads and bridges hadn't been built right. Sally Fletcher sends out her email saying I now control the association. I'm going to call a meeting to stop this lawsuit. File an amended complaint. Has a count two. Count one's the same. What's count two? Count two is the injunction against Sally Fletcher. Okay. Then judge dismisses count one of our second complaint saying you need to be more specific about the IDOT allegations. So then our second amendment, actually this would be our second amended complaint at that point we listed everything we could. We described facts. We had pictures. We did all the things in the world we could. So judge, here's all the reasons why this doesn't comply. So we're not convinced with your explanation about how gee there's no design plan so we can't say whether it complies with IDOT if I understand that correctly. Why shouldn't Mr. Duffy prevail? Why shouldn't we say well that's bunk. You shouldn't have proceeded on the third another complaint you knew you were asked to come up with IDOT violations. You didn't and therefore he's entitled to attorney fees. Well your honor, at that point there was still an outstanding issue besides the IDOT. What was it? That was the specific performance. We did not agree that what had been transferred constituted all the common areas. If you look at the homeowner's declaration it specifically says a barn on lot four is going to be transferred. That was never transferred. So there was still an outstanding issue as to whether or not specific performance had actually been complied with. Thank you. Thank you. Anything else? Thank you. May it please the court, counsel. My name is Carl Tenney. It strikes me that as I'm listening to these other comments that maybe I'll provide a little bit of perspective. My clients are Julie Curry, Kevin Buckley, Brett Mason. Each of those people along with their respective spouses own lots and houses in Woodbine Subdivision. Each of them has been a director of Woodbine Homeowners Association. None of them are named party plaintiffs or defendants. The defendants appellants represented by Mr. Duffy brought these 137 motions in the trial court not against Woodbine who was the plaintiff in that case but against Mr. Ellis who was a partner of Mr. Ty. Mr. Ellis represented Woodbine and those motions were brought against all three of my clients. So just in terms of perspective that's who we are and where we are. First of all with reference to my folks Mr. Buckley or neither Mr. Buckley nor Mr. Mason as I say were ever parties. They weren't ever served with a summons. They never personally  association? Is that what this is about? Yes. They're directors of the association and they voted presumably I think they did to proceed with some of these lawsuits because their bridge was washed down but other than that they have no involvement. So when the 137 motions were brought against Ms. Curry Mr. Buckley and Mr. Mason Mr. Buckley and Mr. Mason filed special and limited appearance objecting to the court's objection was sustained by Judge Payne. That issue is not even, that's not been addressed in any of the filings before this court by Mr. Duffy's clients. The only reason we did not file a special and limited appearance for Ms. Curry was because during the course of the lawsuit there was some discovery. Mr. Duffy's clients wanted to get documents from Homer Chastain Associates that is which were  of communications that Ms. Curry had had with Chastain. Ms. Curry had in the past acted as a consultant, a lobbyist consultant person for Homer Chastain. She believed that the materials that were generated in her consulting with Homer Chastain were privileged, confidential. She did not want those to be produced. So we, and I represented her in that capacity, filed a petition to intervene which I don't know if that makes her a party necessarily. I still say she's not for purposes of this proceeding and these rulings, but I thought that having done that precluded her from making the same special and limited appearance that Mr. Buckley and Mr. Mason did. Having said that, the rule provides and now I'm really just talking about Ms. Curry because I believe our first position anyway with regards to Mr. Mason and Mr. Buckley is no jurisdiction, no argument about that. In my view, they're out. Ms. Curry maybe is left. However, the next step then is Rule 37 allows for sanctions against somebody who signs a pleading or a representative party. There's no allegation that Ms. Curry signed anything. There's no allegation that she's a party. There's no point even made in any arguments to this moment that her having intervened is a significant factor at all. Maybe you think it is and if so then we'll discuss that, but she's not a party. She never signed anything. She's not the attorney that represented. Your position is essentially that the volunteers on a Rule 137 rule trying to pierce the corporate veil of the homeowners association to get at the directors and not the association itself? Apparently, at least in substance, I had not thought of that particular concept, but that seems to be the practical or realistic effect of what they want to do. Did your clients sign something personally? No. It's just the association that brought this litigation? Yes. And you raised this at the trial level and your motion of special and limited appearance was granted? Well, the special and limited appearance was only on behalf of Mr. Mason and Mr. Buckley and it was before the 137 motions were filed, but certainly in response to the 137 motions we certainly did raise that. All these things that I have said to this point, I think... One in the 137 motions addressed Mr. Buckley and who else did you say? Mr. Mason and Ms. Curry. What in the motion addressed them specifically? I'm sorry? What in the 137 motion addressed them specifically? The 137 motions sought sanctions against Mr. Buckley, Mr. Mason and Ms. Curry on the theory that they were the real party in interest. Although, and I referenced the authorities in my rather short brief, I don't believe... There are five of the cases that are cited in support of this proposition that the individuals ought to be responsible only awarded sanctions against the attorney. In another one there was a party that was held responsible, but that party had signed a verification of a pleading. Another one distinguished that situation as being a essentially responded superior or vicarious liability situation because the attorney that had acted was a full-time employee of the party, so that party was ordered to pay sanctions. In a nutshell, there are no authorities that I'm aware of that support the proposition that the individual directors as representatives of the party, Woodbine is the party, would have any responsibility for sanctions. And then finally the photographs that speak for themselves I think need to be people like Ms. Curry, Mr. Buckley, Mr. Mason. They're not lawyers, they're not engineers. They buy expensive lots and or homes in a nice subdivision newly constructed, the bridge washes out, the roads are falling apart. It's logical and rational. Do photos ever speak for themselves if they have not been authenticated? Well, I think those photos are worthy of consideration and they weren't offered any evidence, but I think they're worthy of consideration when we're analyzing actions that these directors took to vote in support of a lawsuit. If we're talking about whether they acted in good faith, bad faith, vexatious, if they haven't been authenticated, it could be a photo of a completely different subdivision, couldn't it? Yes. It could be. So they really don't speak for themselves. Well, I don't know that Mr. Duffy or his clients would, if asked today, tell you that those are not photos of the roads and bridges in this subdivision. To suggest they're not seems disingenuous to me. Well, I presume your argument would be that the trial court certainly thought that they were pictures of the subdivision in question. Yes, of course. And those are all the things that I have to say unless there are more questions. Seeing none, thank you, Counsel. Rebuttal, please. Thank you, Your Honors. It seemed to me when you were arguing initially that your complaint basically is about the conduct that occurred at the filing of the third amendment complaint and subsequent thereto. Are the attorney fees you're seeking broken down into pre-third amendment complaint versus third amendment complaint and subsequent conduct? It's actually broken down to the motions to dismiss the first, second, and the third amendment complaint based on the Ziodot issue. So they are broken down to the specific... The sanctions you're seeking are attorney fees, right? Yes. Are you trying to get attorney fees covered up until the filing of the third amendment complaint? I'm trying to get them through the dismissal of the third amendment complaint, yes, because the court found that that was invalid as well and dismissed it with prejudice. So for the first, second, and third amendment complaint, all of which asserted... were reported to assert IDOT violations without ever... I thought you argued previously that there was... it was reasonable for them to file the initial complaint. Yes. There's cases in Illinois, one case you cited in our brief where the court found that 22 of the 23 accounts were without adequate foundation and sanctions and counseled based on those. The one account they found was valid and didn't impose sanctions on that one. So we are not seeking sanctions with respect to the complaint that solely sought transfer of property. I'm sorry, I had you digress. Please continue with your rebuttal you had planned. Thank you, Your Honor. With respect to that, I don't believe I have a point about the photographs, but the photographs also... The plaintiffs didn't assert that somehow if there was a pothole in a road that that somehow violated a contract or a sales agreement between them. They allege that they violated IDOT standards. If I drive down I-55 and I see a pothole, that doesn't automatically give rise to a cause of action against whoever constructed that... You heard the distinction that counsel attempted to draw between violation of IDOT standards and design insufficiency for IDOT? The first thing to say is that there was a design plan, because as I mentioned that was attached to all the complaints, but if that is their argument, they should have waited until they obtained a design plan before they... If it was impossible to assert an IDOT violation without getting a design plan, they should have not moved forward without a design plan, without having a design plan, because by their own admission they could not possibly assert any IDOT violation, which is what they did. They could have asserted something else, not based on IDOT, but if their argument is... Well, if your client is the one who supposedly had a design plan, why couldn't they have filed the case and sought it in discovery? Why would that be improper? I'm sorry, my client? Yeah, your client supposedly had a deficient design plan and that was the key. Why couldn't they have filed a lawsuit and said they wanted it in discovery? Well, we did produce a design plan in discovery. It was the initial plan that I mentioned that included design specifications. They apparently want a different document than that was, but in our positions, that was a design plan. It set forth the construction specifications of the roads, bridges, and culverts at the association. Just to finish with respect to Sally Fletcher, I just want to point out again that after the two-day injunction hearing, Sally Fletcher proved that her purchase was bona fide. The defendants were given a full opportunity over two days to file as many witnesses as they wanted, and again, the three directors all testified. They had an opportunity to show whatever evidence they had to support their allegation. Nonetheless, this is a motion to dismiss, and the court is supposed to, and we are supposed to, assume all well-pleaded facts as being true. Why shouldn't they make reference to photographs of circumstances, except that as being true too, without authentication? There's no authentication on a motion to dismiss. I understand, but the photographs also fall short of establishing that there's a even if they are what they report to be, there's no connection between showing whatever they show and an IDOT violation. Trying to understand these IDOT situations, maybe IDOT has a rule that says you need a certain design for a 100,000 pound bridge. You need another design for 200,000. You need another design for 300,000. And what design applies here? Well, we don't know what kind of, maybe this is a two-pound bridge. Is that the way this argument works? I believe there's possibly nothing. These are township roads. I don't know if there's an IDOT standard. You guys could have built whatever you wanted. It didn't violate any IDOT rules because you didn't say this is going to be a 100,000 pound bridge. That's correct. I agree with that. If there was a standard that applied in the first place, and again, I believe there's no IDOT standards for a golf cart path on a golf course, so there would not be any applicability. Counselor, you're out of time to answer me this. How did the trial court abuse his discretion in denying sanctions? No reasonable person could have taken the view he adopted? Reviewing a motion with respect to Rule 137 sanctions, first of all, there's case law that we cited in our brief that in order to allow the appellate court to make an informed decision, the trial court has to set forth the reasons why he's ruling as he is on the motion, even if he's denying the motion. In this case, first of all, with respect to Sally Fletcher's motion, the judge made no comment, and with respect to David Fletcher, made a very conclusory comment. But in reviewing a trial court's decision on it, the appellate court has to determine whether the court's ruling was informed based on valid reasoning and follows logically from the facts. The facts are that the appellate court did not perform a factual investigation to support any IDOT claim. They didn't perform a factual investigation sufficient to say that Sally Fletcher's purchase was not bona fide. They had no evidence whatsoever with respect to either, but they shot first, as we said, and asked questions later. They filed the complaint, and at that point attempted after the client spent considerable resources. I have a question. I want you to respond to Mr. Tunney's question. You're going after three directors of the Homeowners Association in this Rule 137 matter who were just directors, never signed anything. Is it your position that if they authorize this litigation that they're liable under 137? Yes, and I disagree with counsel that we didn't address that. We addressed that at length in both our opening brief and our reply brief, and the actual part of the unrebutted evidence, or the actual parties in this case, are the three directors. There was never any authorization. They sued in the name of the Homeowners Association, but there was never the required approval of the Homeowners Association to proceed. It was a requirement that any expenditure over $10,000 has to be... So if we have a board of directors of some corporation, you're now going to be checking into the board minutes to see whether or not the board of directors were acting appropriately when they claimed to be certainly a valid interest that the directors are acting wholly and flagrantly. What case law stands for that proposition in this context? First of all, there's a case law that we cited, a Rule 11 case in the Northern District of Illinois, but there's a case that a person who's the actual party in interest is sanctionable under Rule 11, which, by analogy... Was that the board of directors of a corporation or a private entity? There is, as Your Honor mentioned, the host of a veil-piercing law in Illinois that if an officer or director loses the protection of a corporation, that acts wholly outside the scope of its authority, which is inequitable. In this case, there's no evidence that the association ever approved the litigation or agreed to continue it after... So absent evidence that the association approved, you can go after the board of directors? Yes, because they're the ones who acted. They're the ones that... When are they supposed to ask for approval? Can they complain? Absolutely. They should have. Justice Cook, any additional questions? Thanks to all three of you. The case is submitted. The court stands in recess.